UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER MAIBERGER, et al.,

        Plaintiffs,

v.

CITY OF LIVONIA, et al.,

        Defendants.

_____/

Case No. 2:09-cv-15000

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT (docket nos. 10 and 13)**

This is an action for violation of due process and equal protection, tortious interference with business expectancy, civil conspiracy and violation of the Michigan Open Meetings Act. The plaintiffs are a towing company, Ross Towing of Livonia, and its owner, Christopher Maiberger (collectively, "Ross Towing"). The defendants are Livonia Towing Company and its owner, John Klotz (collectively "Livonia Towing"), the City of Livonia, the Livonia City Council, and various Livonia officials and council members. The action is based upon Ross Towing's failed bid for a towing contract with the City that was ultimately awarded to Livonia Towing.

The action was filed in Wayne County Circuit Court and removed to this Court on December 23, 2009. The docket has been extremely active since that time. The defendants filed two motions to stay and the plaintiffs filed cross-motions to permit discovery and a motion to amend the complaint. The Court granted the defendants' motion to stay discovery on February 24, 2010 and granted plaintiffs' motion to amend the complaint on April 16, 2010, giving the plaintiffs twenty days in which to file their proposed amended complaint. The plaintiffs filed their first amended complaint on April 20, 2010.

Before the Court are two motions for summary judgment, filed by two different sets of defendants. Defendants John Klotz and Livonia Towing have filed a motion for dismissal and summary judgment on the two counts asserted against them, arguing that the allegations in the amended complaint fail to state a claim against them for either tortious interference or civil conspiracy. The municipal defendants have also filed a motion to dismiss or for summary judgment, arguing that the plaintiffs lack standing to bring a suit challenging the award of the contract to Livonia towing, that the plaintiffs' claims are barred by qualified, legislative and governmental immunity, that the various allegations fail to state claims upon which relief may be granted, and that any claim under the Michigan Open Meetings Act is barred by the applicable statute of limitations.

The Court has reviewed the pleadings, the briefs, and the relevant facts in the record, and held a hearing on defendants' motions on April 22, 2010. For the reasons stated below, defendants' summary judgment motions will be granted.

## FACTS

The City of Livonia contracts for the provision of towing services within the city limits. Amended Complaint ¶ 15. The City contract awards a towing company the right to provide towing services to City-owned vehicles well as to set rates for private towing within the city limits. *Id.* ¶ 16. The towing contract is extremely lucrative to the successful bidder. *Id.* ¶ 17. Livonia Towing, owned and operated by defendant Klotz, has held the towing contract with the City for the past twenty years. *Id.* ¶ 18.

Livonia has a city ordinance that requires the City to solicit sealed bids by advertisement for the towing contract and forbids the contract to "be awarded other than to the lowest bidder except by authority of the council." Livonia Ordinance, Chapter 3.04.140.C. The ordinance also provides that "[t]he council, at its discretion, shall have the

right to reject any and all bids...." *Id.* There is also an ethics ordinance that prohibits a city official or employee from "us[ing] his/her official position to unreasonably secure, request, or grant, any privileges, exemptions, contracts or preferential treatment for himself/herself or others." Livonia Ordinance, Chapter 2.200.

The plaintiffs allege that Livonia Towing has not had to participate in a competitive bidding process for years. Amended Complaint, ¶ 19. The plaintiffs allege in their briefs on information and belief that relatives of Livonia police officers work for Livonia Towing, relatives of Klotz work for the City of Livonia, a family member of Council Member Godfroid-Mareki obtained substantial income from Klotz in 2008, and defendant Chief of Police Stevenson has personal or financial connections with Livonia Towing. Plaintiffs do not make these allegations in the amended complaint.

Maiberger obtained a lease on property in Livonia in May, 2008 and later obtained a variance (allowing for an impound lot) and began operating Ross Towing of Livonia. Amended Complaint ¶ 22. Maiberger's family owns and operates the Larry Ross Garage, Inc., which has provided towing services to the City of Southfield for many years. *Id.,* ¶ 14. Prior to the opening of Ross Towing of Livonia, Livonia Towing was the only towing company in Livonia and therefore had no competition for the towing contract with the City of Livonia. *Id.*, ¶ 24.

Maiberger alleges that police officers harassed him and his employees by engaging in "near-constant" surveillance of Ross Towing's business by police officers in police cars parked across the street from the business. Amended Complaint ¶ 25-26. Maiberger asserts that police cars regularly followed Maiberger and his employees as they left the premises of Ross Towing until they left the jurisdiction. *Id.*, ¶ 26. Maiberger was also pulled over twice in one week for allegedly not wearing his seatbelt, although on each

occasion he was wearing his seatbelt. *Id.*, ¶¶ 27-28. Police department employees wrote memos supporting Livonia Towing and against Ross Towing's bid for the towing contract and began investigating Ross Towing for no apparent reason. *Id.*, ¶ 30. Maiberger alleges in a brief, on information and belief, that the memorandum written by Officer Scott Tar intentionally misrepresented information provided by Officer Snook, the impound officer of the City of Southfield, but this allegation is not in the amended complaint.

Maiberger met with Chief of Police Stevenson in order to introduce himself. Amended Complaint ¶¶ 36-37. Stevenson told Maiberger that his loyalties were with Livonia Towing and that he could not foresee going with anyone else to provide towing services. *Id.*, ¶ 37.

The towing contract between the City and Livonia Towing expired on October 10, 2008. Amended Complaint ¶ 31. The zoning variance for the impound lot is explicitly contingent on Livonia Towing maintaining its contract with the City and when the contract expired so did the variance permitting Livonia Towing to operate its towing business. *Id.*, ¶¶ 31-32. Maiberger asserts that Livonia Towing was therefore not qualified to submit a bid to provide towing services to the City. *Id.*, ¶ 35.

On October 20, 2008, the City published a notice that it was seeking qualified applicants to competitively bid on the towing services contract. Amended Complaint ¶ 33.

On November 17, 2008, Livonia Towing and Ross Towing submitted sealed bids for the towing contract. Amended Complaint ¶ 38. The bid packet provided by Ross Towing included a letter of recommendation from the Southfield Chief of Police. *Id.*, ¶ 41. Maiberger alleges that on November 21, 2008, Livonia Police Chief Stevenson called the Southfield Chief of Police and told him to withdraw his letter of recommendation. *Id.,* ¶ 42.

In previous years the Livonia Chief of Police provided reports and recommendations to the Livonia City Council regarding proposed towing contracts. Amended Complaint ¶ 39.

Maiberger alleges that Mayor Jack Kirksey removed Chief of Police Stevenson from consideration of the bids in this case because Stevenson had contacted the Southfield Chief of Police and asked him to withdraw his letter of recommendation for Ross Towing, and because the plaintiffs had complained of "other intentionally tortious actions by Defendant Stevenson and other employees of Defendant Livonia." *Id.*, ¶¶ 40-46.

Plaintiffs assert that an unsigned report and recommendation, dated December 30, 2008, was in existence by January 12, 2009. Amended Complaint ¶ 48. That same day, a signed report and recommendation was distributed and shortly thereafter withdrawn. *Id.*, ¶ 49. The next day, another signed report and recommendation was distributed with bid packets for each company attached. *Id.*, ¶ 50. The report and recommendation was authored by Michael Slater, Livonia Director of Finance, and Sean P. Kavanagh, Livonia City Attorney. The report and recommendation found that the Ross Towing proposal was higher than the proposal by Livonia Towing because the Ross Towing contract proposed an additional charge of $35 in cases where a flatbed tow truck was used, and flatbed wreckers are used for a majority of tow jobs. The report recommended that Livonia Towing be awarded the contract for towing services, and that Ross Towing be used to provide towing services if Livonia Towing was unavailable to provide a particular service. Livonia Towing Motion for Summary Judgment, Exh. D.

On January 21, 2009, Michael Slater, the Livonia Director of Finance, presented the report and recommendation to a Study Committee Meeting of the Livonia City Council. At this meeting, Council member Meakin offered a resolution to grant the contract to Ross Towing, but no vote was taken. Amended Complaint ¶ 52. Plaintiffs allege on information and belief that, at the study committee meeting, Ross Towing had four votes in support of their receiving the towing contract, while Livonia Towing had only one vote. *Id.*, ¶ 53.

On February 8, 2009, council member Joe Laura emailed council member Godfroid-Marecki stating that, contrary to the conclusion in the report and recommendation, it appeared that Ross Towing was the lowest bidder because the report and recommendation did not give credit for a 10% discount Ross Towing proposed to provide to all Livonia residents, and that the City's evaluation of the bids appeared "sloppy at best." Amended Complaint ¶ 55.

Plaintiffs allege on information and belief that a quorum of the city council met in a secret meeting at a restaurant in Plymouth, Michigan to discuss what to do about the towing contract. Amended Complaint ¶ 57. Plaintiffs also allege on information and belief that Mayor Kirksey met with certain members of the city council immediately prior to a March 9, 2009 city council meeting to block the towing contract from being sent back to the City for further analysis, to force the towing contract to be voted on that evening, and to ensure the towing contract was awarded to Livonia Towing. *Id.*, ¶ 60.

On March 9, 2009, the City Council held a public meeting and voted on the towing contract. Amended Complaint ¶ 59. Councilman Laura offered a resolution at that meeting to extend the ethics ordinance to all department heads, including the Police Chief and Fire Chief. *Id.*, ¶ 61. The resolution did not pass. *Id.*, ¶ 62. During the March 9, 2009 City Council meeting, plaintiffs allege that Council Member Marecki "repeatedly referred to Defendant Livonia Towing as the winning company and Plaintiff Ross Towing as the losing company", which plaintiff asserts "[i]ndicat[es] clearly that the decision to grant the towing grant to Defendants Livonia Towing and Klotz had already been made in some nonpublic meeting, and that the whole process was a sham." *Id.*, ¶ 64. During the March 9, 2009 meeting, Council Member Joe Laura stated that:

… I've seen department heads try to get involved in this inappropriately um,

[unintelligible] to the point of an emotional tirade. I've heard all kinds of stories of department heads trying to influence people um to try to support certain parties. ...

... I'm just amazed at the flip-flopping that's going on. At the conversations that are going on, um, and the stuff that I'm receiving back from, you know, what department heads are threatening who to try to get things done. Mayor, I'm gonna be talking to you after about some of your department heads and I'd like for you to take a look at them. Some of the allegations, at least to investigate. ....

Amended Complaint ¶ 66.

The City Council awarded the towing contract to Livonia Towing at the March 9, 2009 meeting by a vote of three to two. Amended Complaint ¶ 65. Plaintiffs allege, however, without further elaboration, that "Plaintiffs were actually granted the contract at some procedural stage, prior to the contract being awarded to Defendants Livonia Towing and Klotz." *Id.*, ¶ 87.

Plaintiffs filed this action in Wayne County Circuit Court on October 30, 2009, and it was removed to this Court by defendants on December 23, 2009.

The Court granted the plaintiffs leave to file an amended complaint on April 16, 2010. The amended complaint contains five counts. Count one, asserted against the City of Livonia, Mayor Kirksey, Chief of Police Stevenson, Klotz and Livonia Towing, is a claim for tortious interference with an advantageous business relationship or expectancy. Count two, asserted against the City, the City Council, council members Meakin, Toy, and Godfroid-Marecki, Mayor Kirksey and Police Chief Stevenson, is a claim that the defendants deprived the plaintiffs of a constitutionally protected property interest without due process of law. Count three, asserted against the same defendants, is a claim that the government defendants violated the plaintiffs' right to equal protection by treating the plaintiffs less favorably than other similarly situated persons without a rational basis. Count four, asserted against the City, the City Council, and council members Meakin, Toy and

Godfroid-Marecki, claims that the named defendants violated the Michigan Open Meetings Act by deliberating about and awarding the towing contract in a non-public meeting. Count five, asserted against all defendants, is a claim for civil conspiracy.

## LEGAL STANDARD

While the motions are captioned as motions for summary judgment, the motion filed by the Livonia Defendants appears to be both a motion to dismiss the complaint pursuant to Fed. R. Civ. 12(b)(6) and a motion for summary judgment pursuant to Fed. R. Civ. P. 56.

Motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) test the legal sufficiency of the complaint. Rule 8 of the Federal Rules of Civil procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.*, at 557, 127 S.Ct. 1955 (brackets omitted).

*Iqbal* 129 S.Ct. at 1949 (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

The Court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. The court should then consider only the well-pleaded factual allegations, assume their veracity, and determine whether they state a plausible claim for relief. *Id.*

If matters outside the pleadings are presented to the Court and not excluded, the Court must treat the motion as one for summary judgment and give all parties reasonable

opportunity to present all material pertinent to the motion. Fed. R. Civ. P. 12(d). Summary judgment should be rendered if the pleadings, the discovery and disclosures on file and any affidavits show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). When a motion for summary judgment is properly supported, the party opposing summary judgment may not rely on allegations or denials in its pleadings but must by affidavits or otherwise set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). Affidavits filed in opposition to summary judgment must be made on personal knowledge, setting forth admissible facts. Fed. R. Civ. P. 56(e)(1).

## ANALYSIS

I.  Summary Judgment Motion by City of Livonia Defendants

The municipal defendants - the City of Livonia, the Livonia City Council, Council Members Brian Meakin, Laura Toy, and Terry Godfroid-Marecki, Mayor Jack Kirksey, and Police Chief Robert Stevenson (collectively "the Livonia Defendants") have moved to dismiss and/or for summary judgment on four grounds. First, the Livonia defendants assert that the plaintiffs lack standing to bring this suit because disappointed bidders do not have standing under Michigan law. Second, the Livonia defendants assert that the plaintiffs' claims are barred by qualified immunity, governmental immunity and legislative immunity. Third, defendants assert that the claims against the Livonia defendants fail to state a claim upon which relief may be granted. Fourth, defendants assert that plaintiffs' claims under the Michigan Open Meetings Act are barred by the statute of limitations.

A.  Standing

Defendants move to dismiss plaintiffs' claims of violation of due process and equal protection on the grounds that plaintiffs lack standing to assert these claims.

Standing doctrine places constitutional and prudential limits on who may bring suit in federal court. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 291 (6th Cir. 2006). Constitutional standing requires a plaintiff to "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Id.* (*quoting Allen v. Wright*, 468 U.S. 737, 751 (1984)). The injury-in-fact must be concrete and particularized, and actual or imminent, not conjectural or hypothetical; it must be fairly traceable to the actions of the defendant and likely to be redressable by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Under the doctrine of prudential standing, a plaintiff may not raise generalized grievances and generally may not raise the rights of third parties. *Club Italia*, 470 F.3d at 291. One prudential standing requirement is the "zone of interest" test, which requires a plaintiff to show that the rights he or she is seeking to protect are those rights contemplated by the statute or constitutional guarantee being invoked. *Id.*

Defendants argue that under Michigan law, disappointed bidders have no standing to challenge the award of a contract to another bidder. In support, defendants cite *Talbot Paving Company v. City of Detroit* ("Talbot II"), 109 Mich. 657, 660 (1896) *and City of Detroit v. Wayne Circuit Judges*, 128 Mich. 438, 439 (1901).

*Wayne Circuit Judges* involved a challenge to an award by the City of Detroit of a contract to repave a street. A bidder (who was also a taxpayer) that was not awarded the contract filed suit, alleging that the award should have been made to him as the lowest bidder whose bid was alleged to have conformed to the specifications as published, while the winner's bid did not. In *Talbot II*, the Detroit City Council rejected the plaintiff's bid for a repaving contract, although it was the lowest bid, on grounds that the Supreme Court found "purely technical and without foundation." In both cases, the Michigan Supreme

Court held that the plaintiffs lacked standing to bring the suit. The reasoning of the court was that whenever an action is brought for breach of a duty imposed by statute, the party bringing it must show that he had an interest in the performance of the duty and that the duty was performed for his benefit. *Talbot II*, 109 Mich. at 660. The Michigan court concluded that statutory provisions that require the acceptance of the lowest responsible bid were not enacted for the benefit of an unsuccessful bidder but were enacted for the benefit of the citizens of the city. *Id.* at 662.

In *Malan Constr. Corp. v. Board of County Road Commissioners*, 187 F. Supp. 937 (E.D. Mich. 1960), Judge Levin summarized the reasoning of the earlier cases:

> Competitive bidding is not intended to benefit bidders. It is designed to protect the taxpaying public from fraud or favoritism in the expenditure of government funds for public works projects. The Michigan Supreme Court has held that the duty of public officials to consider honestly competitive bids runs directly to the community and that, therefore, only the public, through a taxpayer's suit, has standing to enjoin a proposed contract. The incidental benefit received by bidders from competitive bidding does not allow an unsuccessful bidder to bring a private action.

*Malan Constr.*, 187 F. Supp. at 939 (citing *Talbot II*).

Plaintiffs assert that the Michigan cases cited by the defendants are irrelevant, and that plaintiffs have federal constitutional standing under the Sixth Circuit case of *Club Italia Soccer*, 470 F.3d at 291. In *Club Italia*, a nonprofit sports organization brought a section 1983 claim against Shelby Township, Michigan, alleging that the township's bidding procedures for development of a soccer complex and its acceptance of a bid from a competing business deprived the organization of due process and equal protection. The township had been involved in discussions with Soccer City, a for-profit company that wished to develop and construct a soccer complex on township property. Soccer City submitted a formal proposal and did environmental testing on two sites. Club Italia, a nonprofit sports organization, expressed concerns about the bidding process at town board

meeting and expressed interest in submitting a proposal. The board held a special meeting at which it decided to accept additional proposals and, ten days later, issued an "invitation to compete," inviting all other interested parties to submit proposals. The invitation to compete required proposals to be submitted within three weeks and required bidders to guarantee that the winner would reimburse Soccer City for its costs of environmental testing. Club Italia was unable to conduct necessary surveying and design needed to complete its bid in the time allotted, and the township board refused to grant Club Italia more time. As a result, Soccer City was the only entity submitting a bid and won the contract.

Club Italia sued in federal court. The district judge dismissed the case on the grounds that the plaintiff lacked standing as a disappointed bidder. The Sixth Circuit disagreed with this reasoning.[1] The Sixth Circuit explained that the rule in this circuit is that "unless a party brings suit under the APA [Administrative Procedures Act] or similar legislation which evinces a congressional intent to create a grounds for standing for a disappointed bidder, this Court will not confer standing on disappointed bidders" because disappointed bidders do not come within the zone of interests sought to be regulated or protected by bidding statutes. *Club Italia*, 470 F.3d at 294. Because the plaintiff did not rely on the APA or similar legislation, the Sixth Circuit held that the district court was correct that it would be improper to grant the plaintiff standing as a disappointed bidder. The court found, however, that the inquiry did not end there because the district court neglected to address the plaintiff's assertion that it was not a disappointed bidder for the reason that plaintiff never actually submitted a bid. The Sixth Circuit was persuaded by the plaintiff's argument that

---

[1]The Sixth Circuit ultimately upheld the dismissal on the grounds that the plaintiff failed to make out a substantive case of violation of either equal protection or due process.

its standing arose from the fact that it was not afforded adequate opportunity to submit a proposal in an open bidding process.  The Court ruled that defendant's refusal to allow the plaintiff to bid on the contract was sufficient to allege injury in fact so as to confer federal constitutional standing.[2]

The Court has analyzed the issue and finds that the authority of *Club Italia* does not establish grounds for standing in this case.  *Club Italia* is distinguishable from  the present case because, here, the plaintiffs did in fact bid on the contract at issue, and, as such are disappointed bidders, and lack standing absent a specific statute conferring them the standing to sue.   *Club Italia*, 470 F.3d at 294.  In this case, there is no allegation that the plaintiffs were prevented from bidding on this contract or have been disqualified from bidding on future projects.  *Cf. EBI-Detroit, Inc. v. City of Detroit*, 279 Fed. Appx. 340, 348 (6th Cir. 2008) (distinguishing *Club Italia* and holding disappointed bidder has no standing where there is no allegation that bidder was precluded from future contracts).  Plaintiffs are not suing under the APA or similar legislation, and the Michigan case law makes it apparent that they do not have a state-created entitlement.  Under *Club Italia*, plaintiffs lack standing to challenge their failed bid and summary judgment is therefore appropriate.[3]

---

[2]The Sixth Circuit relied on *Owen of Georgia, Inc. v. Shelby County*, 648 F.2d 1084 (6th Cir. 1981), which ruled that when a state statute required a government body to accept the lowest qualifying bid, the low bidder had standing to challenge the award of the contract to a higher bidder.  The plaintiffs here cannot assert standing based on *Owen of Georgia* because there is no requirement that requires Livonia to award the towing contract to the lowest bidder.

[3]As discussed below, it appears that the plaintiffs would be unable to state a claim for violation of due process or equal protection even if they did have standing.  No protected liberty interest arises absent an allegation that the defendants precluded the plaintiff from entering into other contracts with the state or besmirched the plaintiffs' good name, and no protected property interest  arose where the plaintiffs were never awarded the contract or allege that the municipality had limited discretion, which it abused, in awarding the contract. *Club Italia*, 470 F.3d at  296-97.  Plaintiffs' allegation to the contrary that they were "actually granted the contract at some procedural stage" and that "[l]ocal rules and ordinances of

B.  <u>Michigan Open Meetings Act Statute of Limitations (Count IV)</u>

The Livonia Defendants move to dismiss Count Four of the amended complaint, alleging violation of the Michigan Open Meetings Act, on the grounds that the claim is barred by the statute of limitations contained in the act.

The Open Meetings Act, Mich. Comp. Laws §15.261 *et seq.*, prohibits state and local legislative bodies from doing business in closed meetings. Defendants move to dismiss Count Four as barred by the statute of limitations. Defendants note that the complaint is unclear as to what section of the Open Meeting Act the plaintiffs are relying upon, but argue that even the most liberal of the limitations periods contained in the act bar the present suit.

The Open Meetings Act provides that "any person may commence a civil action in the circuit court to challenge the validity of a decision of a public body made in violation of this act." Mich. Comp. Laws § 15.270(1). The Act provides, however, that a court does not have jurisdiction to invalidate a decision of a public body for a violation of the act unless the action is commenced within the periods of time specified in the Act. Mich. Comp. Laws § 15.270(3). Specifically, an action to invalidate a decision of a public body must be commenced "[w]ithin 60 days after the approved minutes are made available to the public," or, in a case where the "decision involves the approval of contracts, the receipt or acceptance of bids . . ., within 30 days after the approved minutes are made available to the public pursuant to that decision." *Id.* Finally, Mich. Comp. Laws § 15.273 provides that

---

Defendant Livonia limit the discretion of those considering and awarding contracts with the city" are legal conclusions that are not entitled to a presumption of truth under the standard set forth in *Iqbal,* and are implausible in that they are contradicted by all the facts actually in the record. *See Iqbal*, 129 S. Ct. at 1950 (district court not bound to accept as true legal conclusions couched as factual allegations). Nor could the plaintiffs establish an equal protection violation because they would be unable, on this record, to negate every conceivable basis for the government action or establish malice. *Club Italia,* 470 F.3d at 298.

public officials found to have intentionally violated the act may be personally liable for damages not to exceed $500 plus actual costs and attorneys fees, and such an action must be brought within 180 days after the date of the violation that gives rise to the cause of action.

Defendants argue that the latest date that the alleged covert meeting could have occurred was March 9, 2008, since that was the date that the towing contract was awarded to Livonia Towing, and even under the longest limitation period, the latest date to file a claim under the Open Meetings Act would be September 4, 2009. The complaint in this action was filed on October 30, 2009, more than 236 days after the contract with Livonia Towing was approved, and therefore the action falls outside even the most generous limitation period. Alternatively, the minutes of the board meeting that awarded the contract to Livonia Towing were published on March 25, 2009, and the action was filed 219 days after the publication of these minutes, again outside the longest of the limitation periods.

Plaintiffs make two arguments in response. First, plaintiffs cite *Detroit News v. Detroit*, 185 Mich. App. 296, 301 (1990), for the proposition that there is no limitations period for claims brought pursuant to Mich. Comp. Laws § 15.271, the portion of the Act authorizing a person to commence a civil action to compel compliance or enjoin further noncompliance with the act. The *Detroit News* case, however, is irrelevant here. *Detroit News* involved an Open Meetings Act suit brought by a newspaper to enjoin the defendant City of Detroit from closing council meetings concerning settlement strategy in connection with pending litigation relative to the Chrysler Jefferson/Conner Project and to compel the city to produced a sealed copy of the minutes of such closed meetings for in camera review. The court in *Detroit News* explicitly held that the 30 day limitation period contained in Mich. Comp. Laws § 15.270(3) did not apply in that case because the plaintiffs were not seeking

to invalidate the actions of the city council, but were seeking to enjoin further noncompliance with the act and compel the city to produce the minutes of a closed meeting. Here, however, the plaintiffs are seeking to invalidate the actions of the city council taken at the March 9, 2008 meeting and the alleged secret meeting held prior to the official meeting, and are seeking damages and attorneys fees for the meeting. They are not seeking the production of the purported minutes as a remedy, but rather as a discovery tool for furthering their underlying action for invalidation, damages and attorneys fees. This case is therefore unlike *Detroit News*, and the limitation period contained in Mich. Comp. Laws § 15.270(3) and/or Mich. Comp. Laws § 15.273 apply.

Plaintiffs second argument is that an action brought to invalidate the award of the towing contract to Livonia Towing is still timely despite being brought more than 236 days after the alleged secret meeting because, they argue, the time period for bringing a suit to invalidate the contract runs from the date that the approved minutes of the meeting are released. Here, plaintiffs allege that the "decision" was made in the alleged secret meeting, and since no minutes have been released from the alleged secret meeting (and in fact defendants deny any such secret meeting ever occurred), the limitation period contained in Mich. Comp. Laws § 15.270 has not yet commenced running.

The Court finds this argument, while thoughtful, to be without merit. Whatever may have happened in the alleged secret meeting, the record reflects that as a matter of law the contract was awarded to Livonia Towing at the City Council meeting on March 9, 2009. There is no dispute that the minutes of the March 9, 2009 meeting were published on March 25, 2009. The complaint in this action was filed on October 30, 2009, 219 days after the publication of the minutes. Plaintiffs' action to invalidate the award of the contract to

Livonia Towing under Mich. Comp. Laws § 15.270 and any claim for damages under Mich. Comp. Laws § 15.273 is therefore time barred.

This conclusion is not altered by plaintiffs' motion under Rule 56(f) for discovery. As detailed below, the plaintiffs have filed a Rule 56(f) affidavit stating that summary judgment is inappropriate because there are material factual issues as to whether the alleged secret meeting took place. The Court concludes, however, that on the undisputed facts the limitation period for bringing a Open Meetings Act claim has lapsed even assuming that the alleged secret meeting did take place. As the limitations period has lapsed, plaintiffs' other allegations are immaterial and summary judgment is appropriate here.

C. Tortious Interference with Business Relationship (Count I)

Count One of the amended complaint alleges a claim of tortious interference with an advantageous business relationship or expectancy against defendants City of Livonia, Kirksey, and Stevenson, as well as against Livonia Towing and Klotz. The City, Mayor Kirksey and Stevenson move to dismiss Count One as against them on the grounds that the amended complaint fails to state a claim upon which relief may be granted. Specifically, the Livonia Defendants argue that the tortious interference claim should be dismissed because none of the government defendants are third parties to the towing contract and because they are all immune from the tortious interference claim.

1. Does Count I fail to state a claim against the Livonia Defendants?

The Livonia Defendants argue that Count I fails to state a claim against the government defendants because the complaint fails to allege the existence of a valid business relationship or expectancy and because the complaint fails to allege tortious acts interfering with the expectancy.

The elements of a claim for tortious interference with economic relations are: (i) the existence of a valid business relationship or expectancy; (ii) knowledge of the relationship or expectancy on the part of the defendant; (iii) intentional interference causing or inducing a termination of the relationship or expectancy; and (iv) resultant actual damage.

*Lucas v. Monroe County* 203 F.3d 964, 978-79 (6th Cir. 2000); see also *Laurence G. Wolf Capital Mgmt. Trust v. City of Ferndale*, 2009 WL 416785 (Mich. Ct. App. 2009).

An essential element of a tortious interference claim is that the defendant is a third party to the contract or business relationship. *Reed v. Michigan Metro Girl Scout Council,* 201 Mich. App. 10, 13 (1993). A cause of action for tortious interference may not lie against a person that is not a third party to the anticipated contractual relationship. *Id.* Plaintiffs' claim for tortious interference against the City of Livonia fails to allege such a third-party relationship. The Court will therefore dismiss the tortious interference claim against the City.

As to corporate agents, such as the mayor and the chief of police, "[i]t is now settled law that corporate agents are not liable for tortious interference with the corporation's contracts unless they acted solely for their own benefit with no benefit to the corporation." *Id.* Defendants argue that neither the police chief nor the Mayor may be liable for tortious interference with the City's purported contract because there are no factual allegations that support an inference that the police chief or the mayor were acting solely for their own benefit with no benefit to the city.

The Court will dismiss plaintiffs' tortious interference claim against Mayor Kirksey because there are no allegations in the amended complaint that would support such a claim against the mayor. The amended complaint alleges that Kirksey is the elected Mayor of Livonia and a resident of the Eastern District of Michigan (Amended Complaint ¶ 9); that plaintiff Maiberger contacted Mayor Kirksey and asked that he address "these and other

18

intentionally tortious actions" by police chief Stevenson and other employees of Livonia (Amended Complaint ¶ 44); that Mayor Kirksey met with Maiberger and told him that Stevenson would be removed from involvement in evaluating the towing bids and that a three member committee would be formed (Amended Complaint ¶ 45); that Mayor Kirksey removed Stevenson from involvement with the evaluation of the bids for the towing contract and appointed an independent committee to make a recommendation (Amended Complaint ¶ 46); and that immediately prior to the council meeting, Mayor Kirksey met with certain members of the City Council and others "to block the towing contract from being sent back to the City and force a vote on the towing contract that evening to ensure the towing contract was awarded to Defendants Livonia Towing and Klotz" (Amended Complaint ¶ 60).

Even assuming all these allegations are true, there are no allegations that would give rise to the inference that the Mayor was acting solely for his own benefit with no benefit to the City. Rather, these allegations raise the equally strong inference that the Mayor was acting because he believed that Livonia Towing was the best company to perform towing services for the City. Thus, the allegations against Mayor Kirksey falls under the rule articulated in *Reed* that "corporate agents are not liable for tortious interference with the corporation's contracts unless they acted solely for their own benefit with no benefit to the corporation." *Reed,* 201 Mich. App. at 13. The Court will therefore dismiss the tortious interference claim against Mayor Kirksey.

The Court will also grant defendants' motion to dismiss the tortious interference claim against Police Chief Stevenson, because those allegations do not state a valid tortious interference claim against the police chief. The amended complaint alleges that Stevenson is the Chief of Police of Livonia and a resident of the Eastern District (Amended Complaint

¶ 10); Maiberger's business was watched by police department employees, Maiberger's employees were followed from their place of business, and Maiberger was pulled over twice for not wearing a seatbelt when he in fact was wearing a seatbelt (Amended Complaint ¶¶ 25-28); Stevenson and the Fire Chief wrote unsolicited letters praising Livonia Towing (Amended Complaint ¶ 29); members of the police department wrote memos criticizing Ross Towing and began investigating Ross Towing (Amended Complaint ¶ 30); Stevenson told Maiberger that his loyalties lay with Livonia Towing and he could not foresee going with anyone else to provide towing services (Amended Complaint ¶¶ 36-37); Stevenson was removed by the Mayor from considering the towing contract because he had contacted the Southfield Chief of Police and asked him to withdraw a letter of recommendation that he submitted in support of Ross Towing (Amended Complaint ¶¶ 40-46); while the bids were being considered by the City Council, "Defendant Stevenson was still doing all he could to tortiously interfere with and corrupt the bidding process in favor of Defendants Livonia Towing and Klotz, including preparing correspondence to the City Council regarding Ross Towing" (Amended Complaint ¶ 54); and in a February 12, 2009 email, Council member Joe Laura acknowledged that he had heard that Stevenson had "business connections" to Livonia Towing and Klotz (Amended Complaint ¶ 58).

As with the Mayor, even taking all allegations in the amended complaint as true, they do not state a claim for tortious interference against Chief of Police Stevenson. The only allegations that would constitute wrongful conduct on the part of Police Chief Stevenson are allegations that he asked the Southfield police chief to withdraw his letter of recommendation for Ross Towing. There is no allegation that the letter was in fact withdrawn, and the only result was that Stevenson was removed from further involvement in the towing contract. Writing letters in support of Livonia Towing is not per se wrongful,

even if the Court were to credit the double hearsay allegation that Stevenson had business connections with Livonia Towing. Further, the allegations in the amended complaint do not give rise to an inference that Stevenson's actions were solely for his own benefit and not also for the benefit of Livonia. The allegations give rise to an equally strong inference that Stevenson had a good and longstanding relationship with Livonia Towing and therefore believed that the City would benefit from continuing the relationship. Finally, the decision to award the towing contract was the council's decision, not the police chief's decision, and there are no facts alleging that any action of the police chief caused the contract to be awarded to Livonia Towing rather than Ross Towing. In fact, the inference from the pleaded facts is that Stevenson had no further involvement in the award of the towing contract after he contacted the Southfield police chief. The plaintiff's complaint therefore fails to allege facts from which a plausible claim for tortious interference with business expectancy may be drawn against defendant Stevenson, and dismissal of the claims are appropriate against defendant Stevenson.

In summary, plaintiffs' amended complaint fails to state a claim for tortious interference with business expectancy against any of the Livonia Defendants, and the Court will therefore grant the Livonia Defendants' motion to dismiss Count One of the Complaint.

2. Government Tort Immunity

The City, Mayor Kirksey and Police Chief Stevenson also move to dismiss Count I on the grounds of governmental immunity. Governmental agencies such as the City of Livonia are immune form tort liability when they are engaged in the exercise or discharge of a governmental function. Mich. Comp. Laws § 691.1407(1). Officers and employees are immune when engaged in discretionary tasks within the scope of their authority when their actions do not amount to gross negligence. Mich. Comp. Laws § 691.1407(2). Plaintiffs

argue in response that dismissal on the grounds of governmental immunity is not appropriate because the question of whether the defendants were acting within their respective authority is a highly fact-intensive inquiry. See *American Transmissions v. Attorney General*, 454 Mich. 135, 141 (1997).

The Court will not reach or address the issue of governmental immunity because it appears that the complaint fails to state a claim for tortious interference against either defendant as discussed in Section I(C)(1).

D. Qualified Immunity

The Livonia Defendants argue that the federal constitutional claims in Counts Two and Three, asserted against Kirksey, Stevenson, and City Council Members Meakin, Toy, and Godfroid-Marecki, should be dismissed on the grounds of qualified immunity.

Qualified immunity protects governmental officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant raises qualified immunity as a defense, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009). The plaintiff also has the burden of showing the right asserted is clearly established. *Id.* The ordinary procedure in determining the applicability of the defense is first, the court must decide whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right. *Pearson*, 129 S.Ct. at 815-16. If the plaintiff satisfies this first step, the court should then decide whether the right alleged to have been violated is clearly established. *Id.* at 816.

The Livonia Defendants argue that the individual defendants are entitled to qualified immunity because there was no violation, let alone a clearly established violation, of the plaintiffs' constitutional rights because Michigan law gives no rights to unsuccessful bidders. The defendants also argue that the facts do not show conduct by the defendants that would give rise to a constitutional violation.

*Club Italia,* 470 F.3d 286 (6th Cir. 2006), discussed *supra,* supports defendants' argument that there is no equal protection or due process violation here. In *Club Italia* the Sixth Circuit held that there was no due process violation because a disappointed would-be bidder did not have a liberty interest in the township's failure to award the contract to the plaintiff; the township there did not besmirch the plaintiff's good name or prevent it from entering into other contracts. In addition, the court found that there was no constitutionally protected property interest because the bidder neither alleged that it was actually awarded the contract and then deprived of it or that, under state law, the township had limited discretion, which it abused in awarding the contract. *Club Italia*, 470 F.3d at 297. The same is true here. There are no factual allegations that would support plaintiffs' contention that the contract was awarded to the plaintiffs "at some point" or that the town had limited discretion in awarding the contract. Also, allegations that the successful bidder was granted special treatment do not give rise to an equal protection violation when the plaintiff fails to negate every conceivable basis which might support the defendants actions or allege animus. *Id.* at 298-99.

The plaintiffs distinguish *Club Italia* and argue that their complaint adequately states a claim that the defendants violated their clearly established rights because the complaint alleges that the defendants "singled out and treated Plaintiffs less favorably than other similarly situated persons without any rational basis" and "acted out of vindictiveness and

ill will." Amended Complaint ¶ 93. This argument is not persuasive. These are simple legal conclusions and are not, under *Iqbal*, entitled to a presumption of truth. Instead, the proper inquiry is whether the facts alleged create a plausible claim that the defendants were acting without rational basis and out of vindictiveness and ill will.

Plaintiffs rely on *Experimental Holdings v. Farris*, 503 F.3d 514 (6th Cir. 2007), for the proposition that "a 'disappointed bidder' to a government contract may establish a legitimate claim of entitlement protected by due process by showing either that it was actually awarded the contract at any procedural stage or that local rules limited the discretion of state officials as to whom the contract should be awarded." *Experimental Holdings*, 503 F.3d at 519 (quoting *United of Omaha Life Ins. Co. v. Solomon*, 960 F.3d 31, 34 (6th Cir. 1992)). Plaintiffs allege in their amended complaint that they "were actually granted the contract at some procedural state, prior to the contract being awarded to Defendants Livonia Towing and Klotz." Amended Complaint ¶ 87. They argue that this allegation is sufficient to plead a property interest to state a due process claim.

In response, defendants argue, correctly, that the allegation that the plaintiffs were "actually granted the contract at some procedural stage" is the kind of naked legal assertion that is not entitled to the presumption of truth under *Twombly* and *Iqbal*. Rather, the actual facts alleged show that the plaintiffs were never awarded the contract at any "procedural stage" and therefore, as a matter of law, have not been deprived of a recognized property interest for purposes of due process analysis.

The Court agrees with the defendants that the complaint fails to allege a violation of the plaintiffs' rights because it fails to allege facts that create a plausible claim that the defendants deprived the plaintiffs of property without due process of law, or that the defendants singled out and treated the plaintiffs less favorably that other similarly situated

persons or that they were acting out of vindictiveness and ill will.  Summary judgment is therefore appropriate on Counts Two and Three.

E.  Civil Conspiracy (Count V)

The amended complaint asserts a civil conspiracy claim against all defendants.  A civil conspiracy is a combination of two or more persons to accomplish a criminal or unlawful purpose or to accomplish a lawful purpose by criminal or unlawful means.  *Advocacy Org.. for Patients & Providers v. Auto Club Ins. Assn.*, 257 Mich. App. 365, 384 (2003).  Defendants argue that the civil conspiracy claim must be dismissed as to the Livonia Defendants because there is no separate actionable tort upon which to ground the civil conspiracy.  *See id.* ("[A] claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate actionable tort").  Also, the plaintiff has failed to allege material facts showing the existence and scope of the conspiracy.  *Payton v. City of Detroit*, 211 Mich. App. 375, 397 (1995).

The Court agrees with the defendants that plaintiffs' amended complaint fails to allege an actionable tort or, therefore, a claim for civil conspiracy against the Livonia Defendants, and Count Five of the Amended Complaint will be dismissed as to those defendants.

F.  Are Plaintiffs Entitled to Discovery?

The plaintiffs have filed a motion to permit discovery pursuant to Fed. R. Civ. P. 56(f). In their motion and the accompanying affidavit, plaintiffs argue that the following material factual issues require that summary judgment be denied as to the Livonia Defendants because of the need for more discovery.  Plaintiffs argue that they expect to discover that (1) Police Chief Stevenson had a personal and/or financial stake in Livonia Towing being awarded the towing contract, (2) Stevenson called the Southfield Chief of Police and demanded that he withdraw his letter of recommendation; (3) Stevenson and others took

steps to prevent Ross Towing's bid from being considered fairly and equally; (4) it was predetermined that Livonia Towing would win the towing contract; (5) City Council Members met in a non-public meeting at a restaurant in Plymouth, Michigan and decided to grant the contract to Livonia Towing; (6) none of the procedures required for the City Council to hold a closed meeting were followed, nor was the meeting one that was permitted to be closed; (7) the minutes of the alleged non-public meeting were never prepared or made public; (8) City Council members had personal or financial relationships with Klotz or Livonia Towing that should have been disclosed and may have required recusal; (9) Stevenson and others violated the City's ethics ordinance by failing to disclose their interest in Livonia Towing and Klotz receiving the towing contract; (10) Stevenson told members of his police force to engage in an organized pattern and practice of harassing and threatening plaintiffs; (11) fraud, abuse and illegality permeated the bid process and awarding of the towing contract.

First, the Court notes that there is no requirement to permit discovery in the context of a motion to dismiss when the allegations in the pleadings fail to establish entitlement to relief. Rule 56 of the Federal Rules of Civil Procedure permits a defendant to move for summary judgment at any time prior to 30 days after the close of discovery. Fed. R. Civ. P. 56(c). Rule 56(f) permits a party to oppose summary judgment on the grounds that further discovery is needed. Further discovery, however, is not merited if the factual allegations contained in the complaint fail to rise to the standard required by *Twombly* and *Iqbal.*

Plaintiffs cite *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008) for the proposition that "[t]ypically, when the parties have no opportunity for discovery, denying the Rule 56(f) motion and ruling on a summary judgment motion is likely to be an abuse of discretion. Plaintiffs also cite *Vance By and Through Hammons v. U.S.*, 90 F.3d 1145,

1148 (6th Cir. 1996) for the general rule that "summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery." The Sixth Circuit has also held, however, that summary judgment is appropriate, even absent discovery, if the issues can be resolved as a matter of law and the plaintiff has not established that additional discovery will solve their pleading problems. *Chilingirian v. Boris*, 882 F.2d 200, 203 (6th Cir. 1989). Because the Court finds that the plaintiffs have failed to allege legally cognizable claims against the Livonia Defendants, the Court also finds that the plaintiffs are not entitled to further discovery pursuant to Fed. R. Civ. P. 56(f).

II.    Summary Judgment Motion by Livonia Towing and Klotz

Defendants Livonia Towing Company and Klotz have also moved for dismissal or, in the alternative, for summary judgment as to the two counts pending against them, Count One (tortious interference) and Count Five (Civil Conspiracy). For the reasons stated below, the Court finds that the amended complaint fails to state a claim against Livonia Towing and Klotz under either theory, and will therefore grant Livonia Towing's motion to dismiss both counts.

A.    Count One, Tortious Interference

Livonia Towing argues that it is not liable for intentional interference with advantageous business relationship because (a) the plaintiffs did not have a reasonable business expectancy and (b) any interference by Livonia Towing and Klotz was simple competition and did not include any wrongful conduct.

The allegations as to Klotz and Livonia Towing are that Klotz is the owner of Livonia Towing and Livonia Towing has had the towing contract with the City of Livonia for more than twenty years (Amended Complaint ¶ 11,18); Livonia submitted a sealed bid for the towing contract on November 17, 2008 (Amended Complaint ¶ 38); Councilman Laura

heard that Chief of Police Stevenson had "business connections" with Livonia Towing and Klotz (Amended Complaint ¶ 58) and the towing contract was awarded to Livonia Towing (Amended Complaint ¶ 65).

1. Reasonable Expectancy

A valid business expectancy is one that is reasonably likely or probable, not wishful thinking. *Lucas v. Monroe County*, 203 F.3d at 979.

Plaintiffs argue that their allegation that they had a valid business expectancy must be accepted as true at this stage. This is incorrect, because the allegation that they had a valid business expectancy is a mere legal conclusion, which is not entitled to a presumption of validity under *Twombly* and *Iqbal*. Instead, the Court is to look at the factual allegations in the complaint and determine if they establish that the plaintiffs had a valid business expectancy. The Court finds that the amended complaint does allege sufficient facts to allege a valid business expectancy, because it alleges that the Ross Towing bid was the only sufficient bid under the bidding guidelines.

2. Wrongful conduct

Livonia Towing argues that the intentional interference with advantageous business relationship claim should be dismissed because there are no allegations of wrongful conduct. The Court is persuaded by this argument and will grant Livonia Towing's motion to dismiss the tortious interference claim on these grounds.

In *Feldman v. Green*, 138 Mich. App. 360, 378 (1984), the Michigan Court of Appeals held that "one who alleges tortious interference with contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship or another." A per se wrongful act is "an act that is inherently wrongful or an

act that can never be justified under any circumstances." *Prysak v. RL Polk Co.*, 193 Mich. App. 1, 12-13 (1992). If, however, the plaintiff relies upon an intentional, lawful act done with malice and unjustified by law, he must demonstrate, with specificity, affirmative acts that corroborate the unlawful purpose or improper motive. *Feldman*, 138 Mich App. 367-70. Defendants argue that the amended complaint only alleges that Livonia Towing submitted a bid for the towing contract that it had held for over twenty years and that it allegedly had business dealings with the police chief, and that these facts do not allege either the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of Ross Towing.

Plaintiffs argue in response that the amended complaint alleges that the defendants acted improperly, with malice, and intentionally interfered with plaintiffs' bid for the towing contract, and that such allegations are sufficient to withstand defendants' motion to dismiss and require discovery. This argument is incorrect under *Twombly* and *Iqbal*. Plaintiffs' allegation that the defendants acted improperly and with malice are mere conclusions, which are not entitled to the presumption of truth. The actual facts alleged against Livonia Towing and Klotz are that they had a long-standing contract with the City of Livonia for towing services, that they submitted a sealed bid at the same time that the plaintiffs submitted a bid, that one of the council members heard that there was a business connection between Livonia Towing and the Police Chief, and that Livonia Towing won the bid and received the new towing contract from Livonia. These facts do not allege either a wrongful act per se or malice; rather, they most plausibly suggest that Livonia Towing was competing for the same contract as Ross Towing. Plaintiffs' amended complaint fails to

state a claim for tortious interference with business expectancy, and Count One will therefore be dismissed as to Livonia Towing and Klotz.

B. Count Five, Civil Conspiracy

Livonia Towing argues that it is not liable for civil conspiracy because (a) there is no underlying tort on which the defendants could conspire, and (b) after the other defendants are dismissed from the case conspiracy would be impossible because there is only one defendant.

The Court agrees that dismissal of the civil conspiracy claim is appropriate. As discussed above, the plaintiffs have failed to allege any tort against Livonia Towing. There is no underlying tort upon which to base an action for civil conspiracy against the towing company, and there are no factual allegations of wrongful conduct on the part of Klotz or Livonia Towing. Plaintiffs' claim for civil conspiracy therefore also fails.

**CONCLUSION**

For the reasons stated above, both summary judgment motions will be granted in full.

**ORDER**

**WHEREFORE, IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (docket no. 24) is **GRANTED.** .

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: July 13, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 13, 2010, by electronic and/or ordinary mail.

Alissa Greer
Case Manager